Good morning, Your Honor. Eric Olson of counsel to John M. Gannis and Associates on behalf of the appellate. I'm just going to hit a few points and reserve any remaining time that I have. Great. This is a false claims act regarding the Medicare. The government sought recovery for alleged Medicare fraud under the false claims act. And we are in the unenviable position of defending someone who has pleaded guilty to this wrongdoing. At the same time, she has served two years in prison. In her plea agreement, she agreed not to make any double jeopardy challenge to any administrative or civil forfeiture or civil fraud action arising out of a course of conduct that provides the factual basis for the criminal information. And that's the issue. Well, that's one of the issues. What you're trying to convince us is that all that is intended to do is to allow the filing of any of these kinds of actions. But after the filing, everything else is barred. I mean, isn't that what your argument is? I'm not objecting to your filing, but everything else is barred. No. The argument. That's your argument. No. The argument is noticeably broader. That's one of the arguments, and I wasn't going to spend much time on that point. The remaining arguments, and I think they're clearly made, we had this judgment from below that was on partial summary judgment, which, when the other counts were dismissed, it became a complete summary judgment for $1.2 million for the trouble damages and penalties. But wasn't one of your arguments all that's barred by the plea agreement? One of the arguments, our predecessor counsel. Are you withdrawing that argument? I don't understand why you're. No, I am not withdrawing it, but I want to underline two additional. I understand, but how does this argument work when she waived any double jeopardy challenge? The what he said was that his understanding was that they would be permitted to file and that. But not recover. That the defendant would be permitted to argue about whether or not a judgment for amounts beyond the restitution would be permitted. What, Your Honor? The points that I wanted to emphasize, because I understand the problems with. You want to leave this argument and go on to something else? Well played. Okay. Go ahead. If you read the plea agreement, you cannot read it to preclude an argument of liability either under the excessive fines under the eighth amendment. That's nowhere mentioned. Notwithstanding that the Mackey case in this circuit had been decided two years before the plea agreement, which clearly held that that was a legitimate question to be raised in these types of proceedings. And maybe more vividly. So why was it an excessive fine? I was going to take that in the next step. Okay. I keep interrupting you. Go ahead. If you don't mind, we'll get to it. I'll be quiet. And the second thing is what the plea agreement might have said but didn't, we don't know if the defendant would have signed it, was that no objection can be made to a judgment of treble damages, which in addition to real restitution was at least $1.2 million, and it could have been said it wasn't. Now, the one of the significant things looked at in the court below dealing with whether this was an excessive fine was a remarkable document said to be a statistical study that showed up not in the normal course of a motion for summary judgment, but as an appendix to a reply brief in the argument. And the court placed apparently significant weight on the idea that it established that the true damage to the government, the true loss, was significantly higher than the $608,000 that everybody had stipulated to in the plea agreement. Our predecessor in argument, his first opportunity, argued that they seriously disputed much of this statistical study, which seems to me when you're talking in terms of summary judgment or partial summary judgment, to create a classical tribal issue of fact on a point of, quote, evidence that has turned up in a most unusual way. That being one of the very significant steps or keys in the analysis as to whether or not this was an excessive fine under the circumstances. We have a treble damage here. Yes. And, of course, that pumps up the penalty. But it's a civil damage item. And we have that in many other areas, too, antitrust, for example. Yes. But the Mackey case that I mentioned, and counsel called our office last week to alert us that they were going to present to the court the very recent case in the circuit of U.S. v. Bourseau, 531 F. 3rd, 1159, cited in July of this year. And it, like the Mackey case, indicates that excessive fine in the context of this type of case is a legitimate question. Okay. We'll concede it's legitimate. Why is it excessive? Well, it's excessive. Because it exceeds restitution? Well, it exceeds restitution, but the court was evidently acting on the assumption that the damage to the government was not $600,000, as everybody had agreed to and signed on the dotted line in the plea agreement, but was indeed vastly greater, perhaps $1.7 million. And if the judgment rests on the assumption that that is so, which it apparently does, we have, remember this is a tribal issue of fact, or sorry, judgment, we have a tribal issue of fact as to whether that is so. If anybody had thought at the time, or if the government had thought that the true amount of damage was noticeably more than $608,000, it could have been sought the agreement that that was so. And if it was so, we would have been stuck with it. Do you have the exact language in the plea agreement with respect to the 608, 558, 49? Certainly. Because she acknowledges that her fraud scheme had caused a loss, but is there language in there that says this is the loss and not a penny more? Or does it say a loss of at least 608? What's the exact language? It's ER 90, I think. I don't have it in front of me right now. The language that I have marked here in my starting at ER 84, the next to the last line, the parties currently believe that the applicable amount of restitution is approximately $608,558.49. Currently believe in approximately? That's what it said, and I didn't get to the end of the sentence and to the next amount. But recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing and that Medicare may assert an overpayment due in a greater amount. So that's in there? Indeed. So it wasn't fixed at 608 and changed? No. What I am saying, remember we're talking partial summary judgment, is that in the reply brief, a document shows up that asserts evidently for the first time. My only point was the plea agreement leaves open, leaves it open, that a larger amount may be discovered in the future. That's correct. Okay. That's what I was asking. I'm not saying otherwise. All right. Is the larger amount $1,000,007? It simply comes up in this truly awkward context. It doesn't even come up as based on an affidavit and an accounting attached to the, as part of the showing underlying the motion for partial summary judgment. Do you agree that this is a final and reviewable order, notwithstanding that the realtors' claims are yet to be determined? I have not made an argument based on that. Okay. You have a few minutes left. Would you like to save it for rebuttal? I would like to save it. Okay. Thank you, counsel. Thank you. Mr. Clair? Thank you, Your Honor, and good morning. May it please the Court. I'm Jeffrey Clair, Justice Department counsel for the United States. Your Honor, I think the Court has our position that the double jeopardy claim has been clearly waived by the plea agreement, and I didn't hear any questions from the Court or argument from the counsel that I think require further argument. If you want to go to the next issue, go ahead. I'd like to go to the excessive fines issue. I'd like to proceed there. Counsel mentioned the Borsell case, which I found on Thursday and did not have time to get to the Court in a 28J letter. I did, however, bring it to counsel's attention by telephone. The significance of this case is that it finds that the maximum award under the False Claims Act for civil penalties that were authorized in the case did not constitute an excessive fine. That suggests that a plaintiff or, rather, a defendant arguing that a particular imposition of a civil money penalty and treble damages award under the False Claims Act, one arguing that that's excessive, has a very heavy burden to carry, and that burden has not been discharged here. First and foremost, it's our position that no aspect of the treble damages award under a False Claims Act judgment should be considered a punishment and treated under the excessive fines clause. The Supreme Court's most recent assessment of the character of the treble damages award is the Cook County case, and there the Supreme Court went through both the So I stress the remedial characteristics of a treble damages award. It notes that the government has investigatory costs, that the government needs to create incentives for key TAM relators to bring actions and to compensate them under the statute. It notes that the treble damages award serves as a kind of rough justice compensation for consequential damages. It notes that it also compensates for lost prejudgment interest. And all these factors taken together suggest that the treble damages award is not, in fact, a punishment, but rather serves to compensate the government for losses occasioned by fraud. Several aspects of the statutory scheme underscore the veracity of that conclusion. The first of which is that there is, in addition to the damages award, a penalty provision under the False Claims Act. What that suggests to us is that the punitive portions of an award are in the penalty provision, that if Congress had intended to increase the penalties, it would have increased the civil money penalties authorized by the statute, and that the treble damages provisions are intended to serve a different purpose, a remedial purpose, not a punitive purpose. And for that reason, they are not subject to the excessive fines clause in the first instance. This is a question that is as yet unresolved by the Court. The Court came closest to examining it in the Matthew case, where it reserved the question of whether the damages award that was not issued in conjunction with a substantial civil money penalty should be analyzed under the excessive fines clause. You have that you have that circumstance here where you have the very minimal amount of penalty that could be authorized under the statute in conjunction with a treble damages award. And again, it is our contention that the excessive fines clause simply doesn't apply to that in the first instance. Did some individual initiate this proceeding and the government take it over? Yes, that's correct. It was commenced as a QTAM action brought by a private belayer under the statute. QTAM complaints are filed under seal and forwarded to the government for review, and after that review, the government decided to come into the case. I'll ask you the same question I asked your opponent. What's the government's position on whether there remains the disposition of the realtor's claim? What effect does that have on the finality of the judgment that's before us? Your Honor, we think that's a collateral matter that does not affect the finality or repealability of the judgment. Like attorney's fees cost? Yes. And we thought there's a footnote in the beginning jurisdictional session of our brief that addresses this question. We said I think it was White v. New Hampshire, which is one of a series of cases dealing with the impact of unresolved attorney fee questions. The Supreme Court has concluded that those are collateral matters, collateral to the merits, and their pendency does not affect the finality of the judgment. Is that question one of first impression? I believe it is, Your Honor. I was unable to find any case law directly on the point. However, I do think that the attorney's fee questions are pretty analogous, both in terms of the nature of the monies that are being named at issue and in terms of their relationship to the central merits questions that have been resolved. Anything else that your opponent raised that's not covered by your brief? Well, there is a question of the way to be attached to the evidentiary submission dealing with the amount of the government's actual damages and which suggested to the district court that the actual damages were really much greater than the actual damages that were found at trial, that the government, the court noted that this evidentiary submission suggested that the actual damages were in fact closer to $1.7 million. So the court relied on that? Well, there is a footnote in the court's opinion, Your Honor. It's at page 144. And I don't think it's fair to say that the — of the appendix, I'm sorry. And I don't think it's fair to say that the court relied on it. The court took note of it, and it suggests — it found that the evidence suggested that the actual damages might not have been — or rather might have equaled the actual damages that were actually — that were found in the judgment. But the way I would read this is the legislative history of the False Claims Act notes that because of the difficult nature of investigating and proving fraud, a lot of fraud might go undetected and might not be adjudicated in the False Claims Act. That's true. But I heard the other side saying that the manner in which this came in was irregular, that it wasn't appropriately submitted as evidence, it came in as an attachment to a reply brief, and that it shouldn't have been considered at all and it polluted the district court's conclusion. Well, I think that is their position and argument. There was no reply brief filed in this case, and I'm not clear — it's not clear to me that this was actually raised in the briefs that were filed on appeal to the court. Nonetheless, assuming the argument is properly before the court, we would reject the notion that it polluted the court's finding. I think the court really took notice of this affidavit as tending to confirm the legislative impression that False Claims Act prosecution — So it wasn't offered to — for the purpose of showing what the amount was, but just to support the idea that there was — there's more behind this than one can see at first glance? Yes. I think that's correct. Bear in mind, Your Honor, that the court did not — this evidentiary submission suggests that the actual damages were $1.7 million. The court, however, did not find that the actual damages were $1.7 million. It found that the actual damages were only those stipulated to in the pre-agreement and the criminal case, the $602,000. Again, the court is looking at the excessiveness of the fine. It's noting one reason for having treble damages is that a lot of fraud may go undetected and may not be adjudicated in the case. And it is pointing to this submission as merely tending to confirm the kind of legislative judgment that much fraud does, in fact, go undetected. Again, I think that, in fairness, it's best to let the district court speak for itself on this matter. This is at page 144 of the record excerpts in the footnote where it identifies where the evidentiary submission came in and the way it was attached. The legal principles in this case may be, I think, more difficult in applying than coming to a conclusion about the excessiveness of the fine. If one looks at the nature of the offense, the harm caused to the government, the culpability of the defendant's conduct, there seems to be no doubt that this is not the type of sanction that can be characterized as grossly disproportionate to the offense. If a cost accountant took a look at what it takes the government to put together cases like this, it's huge in terms of dollars. It is. And Congress has, again, Your Honor, I think recognized that in permitting not only civil penalties but a treble damages award to take account of the investigative cost, the prosecutorial cost, the lost prejudgment, and shows the possibility that fraud in a program like Medicare might, that the fraud before the court may only be the tip of the iceberg in the case of the particular defendant. Thank you. Thank you for your argument. Thanks for coming in today. We have a little bit of time for rebuttal. Counsel. A couple of things. Regarding the Borso case, I would have said that its significance was that, A, this court considered that the Eighth Amendment analysis is appropriate in one of these cases, B, that after a several days' trial, the district court determined, and this court agreed, that the issues were appropriately resolved as were set forth in that case. The argument was made that I think is made in the hopes of reaching to the Supreme Court but is inconsistent with the authority in this circuit, at least, of the Mackey and the Borso cases being good examples that you can examine under the Eighth Amendment, the trouble damages and associated penalties in one of these cases. There is a Supreme Court case that says that double damages, the prior amount, might be considered not as penal or punitive in nature, but this court has point-blank held in these cases and in more cases, as I understand, that they are at least partly punitive or penal and the Eighth Amendment is an appropriate basis of examination. When I pulled up the Borso case on Lexis last week, it noted that a petition for cert had been filed, presumably not yet disposed of. I honestly don't know what the status is of that at this point. Is that 531 F. 3rd, 1154? Yes. Because I haven't received a copy of the case. I don't know. Was that sent over to us as a? It was not, Your Honor. I found it Thursday afternoon and did not receive our petition. Why don't you fill out a gum sheet at the conclusion of argument? The clerk will provide it to you. It's a little form where you fill it out and the copy goes to your closing counsel. Anything else? I think we have addressed the other things. I think that the Court should remand this to the district court to deal with the issue that I have raised, and possibly by that time the Supreme Court will have either granted or not granted cert to deal with the issues that they are hoping to establish but I think are inconsistent with the standing authority in this circuit. Okay. Thank you for your argument. The case just argued will be submitted for decision, and the Court's going to stand in recess for about five minutes before we take up the last case on the calendar, which is Johnson v. Walton. If counsel will be up and ready and prepared to go. I'll rise. This Court stands in a short recess.
judges: Trott, Hawkins, Bright